IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

| | |
|---|---|
| TUPELO CHILDREN'S MANSION, INC. | PLAINTIFF |
| v. | CIVIL ACTION NO. 1:23-CV-76-SA-DAS |
| ELEGANT REFLECTIONS LLC, d/b/a ER CONTRACTING | DEFENDANT |
| ELEGANT REFLECTIONS LLC, d/b/a ER CONTRACTING | COUNTER-PLAINTIFF |
| v. | |
| TUPELO CHILDREN'S MANSION, INC. | COUNTER-DEFENDANT |

ORDER AND MEMORANDUM OPINION

On April 17, 2023, Tupelo Children's Mansion, Inc. ("TCM") filed its First Amended Complaint [2] against Elegant Reflections LLC d/b/a ER Contracting ("ER Contracting") in the Circuit Court of Lee County, Mississippi. On May 17, 2023, ER Contracting removed the case to this Court, premising jurisdiction on diversity of citizenship. Now before the Court is ER Contracting's Motion to Stay and Compel Mediation and Arbitration [7]. The Motion [7] has been fully briefed and is ripe for review.

*Relevant Factual and Procedural Background*

In its First Amended Complaint [2], TCM alleges that, on or about December 6, 2021, it entered into a written contract with ER Contracting for the construction and renovation of certain improvements on two TCM properties. Pursuant to the Contract, TCM was to pay $3,219,170.59 for ER Contracting's work on the projects. TCM alleges that after several substantial payments and demands to ER Contracting, ER Contracting "failed and refused to perform its contractual

obligations as defined in the Contract." [2] at p. 3. Consequently, TCM asserts that it terminated the Contract for cause on July 22, 2022.

TCM's First Amended Complaint [2] ultimately sets forth a claim for breach of contract and requests (1) an order declaring liens null and void; (2) treble damages; and (3) accounting and injunctive relief to halt misuse of funds.

After removing the case to this Court, ER Contracting filed its Answer, Affirmative Defenses, and Counterclaims [6] against TCM. In short, it alleges that it stopped its work on the Contract after TCM failed to remit payment. ER Contracting asserts counterclaims for breach of contract, breach of good faith and fair dealing, and unjust enrichment.

On June 6, 2023, ER Contracting filed a Motion to Stay and Compel Mediation and, if necessary, Arbitration [7]. In its Motion [7], ER Contracting attempts to enforce the following provisions of the Contract related to the resolution of disputes:

> § 1.3 Binding Dispute Resolution
>
> For any Claim subject to, but not resolved by mediation pursuant to Section 14.3, the method of binding dispute resolution shall be the following:
>
> . . .
>
> [X] Arbitration pursuant to Section 14.4
> [ ] Litigation in a court of competent jurisdiction
> [ ] Other[.]
>
> . . .
>
> § 14.3 Mediation
>
> § 14.3.1 Claims, disputes, or other matters in controversy arising out of or related to the Contract, except those waived as provided for in Sections 9.10.4, 9.10.5 and 14.1.7, shall be subject to mediation as a condition precedent to binding dispute resolution.
>
> . . .

2

> § 14.4 Arbitration
>
> § 14.4.1 If the parties have selected arbitration as the method for binding dispute resolution in Section 1.3, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. . . .
>
> . . .
>
> § 15.1 Governing Law
>
> The Contract shall be governed by the law of the place where the Project is located except that, if the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 14.4.
>
> . . .
>
> [Addendum A]
>
> 15. Disputes. Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appear or action arising under or relating to this contract shall not delay continuation of work or payment of completed work as described in the Contract Documents. Disputes will be by Arbitration subject to the Arbitration laws of Mississippi. The Contractor shall proceed diligently with performance of this contract, pending final resolution of any dispute arising under the contract.

[7], Ex. 1 at p. 5, 31-32, 38.[1]

TCM has responded in opposition to ER Contracting's Motion [7].

---

[1] The Court notes that Sections 9.10.4, 9.10.5 and 14.1.7 waive certain claims and therefore exempt them from the dispute resolution process. Sections 9.10.4 and 9.10.5 relate to a waiver of claims after final payment is made. *See* [7], Ex. 1 at p. 23. Section 14.1.7 waives consequential damages (i.e. loss of rental income, loss of use, loss of employee productivity, etc.). *See id.* at p. 30.

*Analysis and Discussion*

The Court employs a two-step inquiry in deciding a motion to compel arbitration. *Axiall Canada, Inc. v. MECS, Inc.*, 2023 WL 4015229, at *2 (5th Cir. June 14, 2023) (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). "The first step is to determine whether the parties agreed to arbitrate the dispute in question." *Id*. (quoting *Webb*, 89 F.3d at 258). This step involves two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id*. (quoting *Webb*, 89 F.3d at 258). "The second step is to determine 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id*. (quoting *Webb*, 89 F.3d at 258).

The Court's analysis is guided by federal policy favoring the enforcement of arbitration agreements. *See Robertson v. Intratek Computer, Inc.*, 976 F.3d 575, 579 (5th Cir. 2020) ("In general, federal law requires federal courts to enforce arbitration agreements. . . . courts should keep in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.") (internal quotation marks omitted). Pursuant to the Federal Arbitration Act ("FAA"), "written arbitration agreements are generally 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id*. (quoting 9 U.S.C. § 2).

In its Motion [7], ER Contracting argues that the parties had a valid agreement to arbitrate and that their claims fall squarely within the scope of the arbitration agreement. TCM responds that legal constraints external to the Contract foreclose the possibility of arbitration. The Court will address each step of the inquiry in turn.

4

I.     *Validity of Arbitration Agreement*

"Given the fundamental principal that arbitration is a matter of contract, to determine whether an agreement to arbitrate is valid, courts apply ordinary state-law principles that govern the formation of contracts." *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012) (internal quotations and citations omitted); *Washington Mut. Finance Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) ("[I]n determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement."). Here, the Addendum to the Contract states that "Disputes will be by Arbitration subject to the Arbitration laws of Mississippi." [7], Ex. 1 at p. 38.[2]

Neither party disputes that the Contract is valid under Mississippi law. Further, by bringing claims for breach of contract, TCM necessarily indicates that it has faith in the validity of the Contract and the arbitration agreement contained therein. *See Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 167 (5th Cir. 1998) ("An entity's attempt to enforce an agreement that contains an arbitration clause provides clear and unmistakable evidence that the entity regards itself bound by the arbitration clause."). Therefore, the Court finds that the parties entered into a valid arbitration agreement.

---

[2] This provision in the Addendum seems to conflict with the provision in the Contract which states the FAA shall govern the arbitration. *See* [7], Ex. 1 at p. 32. As such, in its Motion [7], ER Contracting states that that it is unclear whether the arbitration agreement arises under the FAA or the Mississippi Construction Arbitration Act ("MCAA"), but it contends that the analysis would yield the same result under either law. *See* [8] at p. 7. TCM raises no argument on the issue. The Court interprets the Addendum's provision to mean that Mississippi law will apply to the validity of the arbitration agreement and during the arbitration proceeding. To the extent the provision indicates that the MCAA should be applied in deciding the motion to compel, the Court agrees that the outcome would be the same. *See Harrison Cnty. Comm. Lot, LLC v. H. Gordon Myrick, Inc.*, 107 S.3d 943, 949 (Miss. 2013) (applying the FAA's two-part test to a motion to compel arbitration and holding that Mississippi law, like federal law, favors the enforcement of arbitration agreements); *Construction Services, Inc. v. Regency Hosp. Co.*, 2006 WL 3247322, at *2-3 (S.D. Miss. Nov. 8, 2006) (order compelling arbitration in accordance with both the FAA and the MCAA).

*II.     Scope of Arbitration Agreement*

The second determination to be made is whether the disputes fall within the scope of the arbitration agreement. *Webb*, 89 F.3d at 258. The Contract states that "[c]laims, disputes, or other matters in controversy arising out of or related to the Contract, except those waived as provided for in Sections 9.10.4, 9.10.5, and 14.1.7, shall be subject to mediation as a condition precedent to binding dispute resolution." [7], Ex. 1 at p. 31. Section 14.4.1 of the Contract in turn provides that disputes not resolved by mediation shall be subject to arbitration. *Id*.

In *Nauru*, the contract at issue contained a similar clause stating that "[a]ny dispute, controversy, or claim arising out of or in connection with or relating to this Agreement or any breach hereof shall . . . be submitted to and settled by arbitration[.]" 138 F.3d at 165. There, the Fifth Circuit found that "[w]hen parties include such a broad arbitration clause, they intend the clause to reach all aspects of the relationship." *Id*. Further, the Fifth Circuit has held that where parties agree upon a broad, standard arbitration clause—i.e., a provision typically requiring arbitration of "any controversy or claim arising out of or relating to the contract"—"only the most forceful evidence of a purpose to exclude the claim from arbitration would render the dispute non-arbitrable." *Papalote Creek II, L.L.C. v. Lower Colo. River Auth.*, 918 F.3d 450, 454-55 (5th Cir. 2019) (citing *Mar-Len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633, 634 (5th Cir. 1985)) (internal quotations and alterations omitted).

Here, ER Contracting argues that the language of the contract is broad and that the disputes at issue undeniably fall within the scope of the clause. TCM raises no argument to the contrary. The parties entered into a contract to exchange payments for the performance of construction and renovation work. In its Complaint [2], TCM claims that ER Contracting breached the contract when it stopped performing work on the projects. In its Counterclaim [6], ER Contracting claims

6

that TCM breached the contract when it ceased payments. The Court finds that TCM's claims, as well as ER Contracting's counterclaims, arise out of or directly relate to the Contract. Therefore, the claims are within the scope of the broad mediation and arbitration agreement.

III.     *Legal Constraints External to the Agreement*

Having determined that there is a valid arbitration agreement between the parties and that it encompasses the disputes at issue, the Court must consider whether any legal constraints are present that would prevent arbitration. *See Axiall Canada, Inc.*, 2023 WL 4015229, at *2 ("The second step is to determine 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.") (quoting *Webb*, 89 F.3d at 258).

TCM asserts that ER Contracting lacks the legal capacity to bring (and therefore arbitrate) its counterclaims. TCM additionally objects to arbitration of any claim on the basis that ER Contracting waived its right to pursue arbitration.

   i.   *ER Contracting's Legal Capacity to Bring Counterclaims*

TCM argues that ER Contracting lacks the legal capacity to bring its counterclaims because it is a foreign limited liability company ("LLC") not registered to do business in Mississippi. ER Contracting does not dispute that it is a foreign LLC whose registration was administratively revoked on November 28, 2022—prior to the initiation of this lawsuit and its assertion of its counterclaims.

Federal Rule of Civil Procedure 17(b) provides that where a party is not an individual or corporation, its capacity to sue or be sued is determined by the law of the state where the court is located. *See Westgate Plaza, LLC by and through Fuller v. Beacon Group, LLC*, 2019 WL 132212679, at *1 (S.D. Miss. May 1, 2019) (finding that LLC's capacity to be sued must be determined by the law of the state where the court is located). Here, ER Contracting, a limited

liability company, is not an individual or corporation. The parties agree that Mississippi law applies to the analysis of whether ER Contracting possesses the capacity to sue or be sued.

MISS. CODE. ANN. § 79-29-1023(8) provides, in pertinent part:

> A foreign limited liability company whose registration has been administratively revoked may not maintain any action, suit or proceeding in any court of this state until such foreign limited liability company's registration has been reinstated.

Therefore, according to TCM, ER Contracting lacks the capacity to assert its counterclaims and compel its counterclaims to arbitration because it is statutorily prohibited from suing TCM.[3]

For its part, ER Contracting argues that the same Mississippi statute permits it to defend itself in actions in this state. MISS. CODE ANN. § 79-29-1023(6) provides as follows:

> The administrative revocation of the registration of a foreign limited liability company shall not impair the validity of any contract, deed, mortgage, security interest, lien or act of such foreign limited liability company or prevent the foreign limited liability company from defending any action, suit or proceeding with any court of this state.

Thus, according to ER Contracting, it has the ability to enforce the arbitration provision because it is statutorily permitted to defend itself in Mississippi courts.

As an initial matter, because MISS. CODE ANN. § 79-29-1023(6) permits an unregistered foreign LLC to defend actions, the Court agrees that ER Contracting has the ability to enforce the arbitration provision as part of its defense in this action. TCM appears to concede that ER

---

[3] TCM additionally argues that MISS. CODE ANN. § 79-29-809 does not grant ER Contracting the capacity to bring its counterclaims because it is not winding up its affairs. The Mississippi Limited Liability Company Act—specifically MISS. CODE ANN. § 79-29-831(4)—provides that an administratively dissolved LLC may not maintain an action in any Mississippi court until the LLC is reinstated. However, MISS. CODE ANN. § 79-29-809 provides that the dissolved LLC may maintain an action if it is "winding up" its affairs. TCM responds that the statute is inapplicable because it is not a Mississippi LLC, nor has it been dissolved. In any event, the parties' conclusions are ultimately the same. They agree that MISS. CODE ANN. § 79-29-809 would not grant ER Contracting the legal capacity to bring its counterclaims. The Court sees no need to address the issue further.

8

Contracting has the capacity to enforce the arbitration provision as part of its defense, given its argument that ER Contracting should have asserted its right to arbitrate as an affirmative defense.

Importantly though, ER Contracting's ability to defend itself in an action is a distinctly different issue from whether it has the legal capacity to bring (and compel arbitration of) its counterclaims. ER Contracting's argument does not address whether MISS. CODE ANN. § 79-29-1023 precludes it from bringing its counterclaims. The Court recognizes that, in the context of this Motion [7], the issues are somewhat intertwined. In any event, despite ER Contracting's lack of argument on the issue, the Court must consider whether MISS. CODE ANN. § 79-29-1023 prevents ER Contracting from bringing its counterclaims, as asserted by TCM.

The Fifth Circuit has previously held that a similar Mississippi statute barring suits by unregistered foreign corporations did not preclude a corporation's presentation of compulsory counterclaims and third-party complaints. *See Envtl. Coatings, Inc. v. Baltimore Paint & Chem. Co.*, 617 F.2d 110 (5th Cir. 1980); *see also Park v. Cannco Contractors, Inc.*, 446 F. Supp. 24, 25 (N.D. Miss. Sept. 22, 1977); *Atrium Co., Inc. v. ESR Assoc., Inc.*, 2012 WL 4215103, at *8 (S.D. Tex. Sept. 18, 2012) (finding that similar Texas statute would not "close the door" to corporation's compulsory counterclaims). In so holding, the Fifth Circuit reasoned that the statute permitted foreign corporations to "defend against suits, actions, or proceedings brought in courts in Mississippi" and that the legislature "would not have expressly permitted defense by nonqualifying corporate defendants but impliedly circumscribed the scope of that defense by denying the right to bring compulsory counterclaims or third-party complaints." *Id*. at 112. Given that MISS. CODE ANN. § 79-29-1023 includes nearly identical language permitting unregistered foreign LLCs to defend suits in Mississippi, the Court finds that the same reasoning applies here and that MISS. CODE ANN. § 79-29-1023 does not bar ER Contracting from bringing compulsory counterclaims.

9

Thus, the only remaining issue is whether ER Contracting's counterclaims are *compulsory* counterclaims.

Federal Rule of Civil Procedure 13(a) defines a compulsory counterclaim as:

> [A]ny claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

"If a party fails to bring a compulsory counterclaim in the original action, it is barred from asserting the claim in a later suit." *RPV, Limited as Trustee for Village Trust v. Netsphere, Inc.*, 771 F. App'x 532, 534-35 (5th Cir. 2019) ("*Netsphere II*") (citing *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S. Ct. 2504, 41 L. Ed. 2d 243 (1974)) (additional citation omitted). "A counterclaim is compulsory when '(1) . . . the issues of fact and law raised by the claim and counterclaim largely are the same; (2) . . . res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) . . . substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; [or] (4) . . . there is [a] logical relationship between the claim and counterclaim.'" *North Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 205 n. 146 (5th Cir. 2015) (quoting *Park Club, Inc. v. Resolution Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir. 1992)). "A logical relationship exists 'when the counterclaim arises from the same "aggregate of operative facts" in that the same operative facts serve[] as the basis of both claims[.]'" *Netsphere II*, 771 F. App'x at 535 (citing *Plant v. Blazer Fin. Servs., Inc. of Ga.*, 598 F.2d 1357, 1361 (5th Cir. 1979)).

Here, TCM's claims and ER Contracting's counterclaims revolve around the same contract. They seem to agree that at some point ER Contracting stopped work on the Contract, though they dispute which party breached the Contract. Because the claims arise out of the same

agreement and a jury would likely hear the same operative facts underlying each parties' claims, ER Contracting's counterclaims are compulsory counterclaims. *See id*. (counterclaims were compulsory where they "revolve[d] around the parties' compliance with the same settlement agreement"); *Park Club, Inc.*, 967 F.2d at 1058 (claims are compulsory counterclaims when "[b]oth regard the same instruments and transactions, and a jury would hear substantially the same facts in regard to both").

Putting all of this together, MISS. CODE ANN. § 79-29-1023 does not bar ER Contracting from bringing its counterclaims because they are compulsory counterclaims. Thus, ER Contracting has the legal capacity to bring its counterclaims and therefore compel them to arbitration if the arbitration clause is enforceable. This brings the Court to TCM's argument that ER Contracting has waived its right to compel arbitration.

  ii.  *Waiver of Arbitration*

"'Although waiver of arbitration is a disfavored finding,' the right to arbitrate—like all contract rights—is subject to waiver." *Forby v. One Technologies, L.P.*, 909 F.3d 780, 783 (5th Cir. 2018) (citing *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009)). "[A] party claiming that another party waived the contractual right to arbitrate bears a heavy burden to establish the claim. 'There is a strong presumption against' a finding that a party waived its contractual right to arbitrate, and 'any doubts thereabout must be resolved in favor of arbitration.'" *Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002) (citing *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co., Inc.*, 243 F.3d 906, 911 (5th Cir. 2001)).

"[A] party waives its right to arbitrate if it (1) 'substantially invokes the judicial process' and (2) thereby causes 'detriment or prejudice' to the other party.'" *Forby*, 909 F.3d at 783. As to

the first prong of the waiver analysis, "[t]o invoke the judicial process, a party 'must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" *Id.* at 784 (citing *In Re Mirant*, 613 F.3d 584, 589 (5th Cir. 2010)). It is well settled that "[a] party waives arbitration by seeking a decision on the merits before attempting to arbitrate." *In re Mirant*, 613 F.3d at 589 (citing *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009)); *see also Forby*, 909 F.3d at 784 (party invoked judicial process where it sought full dismissal on the merits through a Rule 12(b)(6) motion before attempting to arbitrate).

There are several other factors relevant to determining whether the party seeking arbitration has substantially invoked the judicial process, including the extent to which that party has engaged in discovery and other pretrial activity. In *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004), where the party seeking arbitration answered counterclaims; conducted "full-fledged" discovery, including four depositions; amended its complaint; and filed pretrial materials, motions to compel, a motion for summary judgment, and a motion in limine, the Fifth Circuit found it "demonstrated a desire to resolve the arbitrable dispute through litigation rather than arbitration." On the other hand, in *Pacheo v. PCM Const. Services, LLC*, 602 F. App'x 945, 948 (5th Cir. 2015), where the defendant filed a motion to dismiss confined to one narrow issue, did not respond to or propound its own discovery, and opposed a motion but moved for arbitration before the magistrate judge issued a recommendation, the Fifth Circuit found that it had not substantially invoked the judicial process.

Additionally, waiver will be found where a party moves to compel arbitration after attempting to ascertain "how the case [is] going in federal district court." *In re Mirant*, 613 F.3d at 590 (citation omitted); *Petroleum Pipe*, 575 F.3d at 482 (where party engaged in discovery and

12

learned at a conference that the district court was not receptive to its arguments, court found party invoked judicial process and should not be allowed a "second bite at the apple though arbitration"); *Pacheo*, 602 F. App'x 948 (party's filing of motion to compel arbitration prior to magistrate judge issuing recommendation on separate motion indicated that party was not attempting to see how case was going in district court before moving to compel arbitration).

Here, TCM argues that ER Contracting substantially invoked the judicial process when it filed an Answer [6] that alleged jurisdiction and venue are proper in this Court, requested a jury trial, and failed to assert arbitration as an affirmative defense.

First, "[t]he fact that [ER Contracting] did not plead arbitration as an affirmative defense, standing alone, does not constitute sufficient grounds for finding that [it] waived its right to compel arbitration." *Barot v. R.F. Lafferty & Co., Inc.*, 2015 WL 631970, at *3 (S.D. Miss. Feb. 13, 2015) (citing *Mapes v. Chevron USA Prods. Co., a Div. of Chevron U.S.A.*, 237 F. Supp. 2d 739, 745 (S.D. Tex. 2002)). To the extent that TCM takes this position due to Rule 8(c)'s requirement that "arbitration and award" be raised as an affirmative defense, the argument is misplaced. The "arbitration and award" defense "applies only when disputes have already been arbitrated and the award has been obtained, which is not the situation now before the Court." *Clark v. Nordstrom, Inc.*, 2019 WL 342847, at *4 (N.D. Tex. July 30, 2019) (citing *Mapes*, 237 F. Supp.2d at 745); *see also Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 771 (10th Cir. 2010) (Rule 8(c) applies where dispute has previously been resolved by arbitration).

Second, ER Contracting's Answer [6] falls short of overcoming the "strong presumption" against a finding of waiver. *Gulf Guar. Life Ins. Co.*, 304 F.3d at 484. ER Contracting filed a boilerplate Answer [6] that included a jury demand. One week later, it filed its Motion to Stay and Compel Mediation and Arbitration [7]. When TCM moved to dismiss its counterclaim, ER

Contracting sought clarification of the Order [9] staying the case because it "[did] not seek to waive its right to arbitrate by invoking the judicial process now to respond to a dispositive motion that will be moot if arbitration is compelled." [17] at p. 2. ER Contracting has not filed motions relevant to the merits of the case, nor has it engaged in discovery.

In cases where parties have engaged in limited pretrial activity or filed answers and counterclaims, the Fifth Circuit has found that they did not substantially invoke the judicial process. *See Pacheo*, 602 F. App'x at 948; *Williams v. Cigna Financial Advisors*, 56 F.3d 656, 661-62 (5th Cir. 1995) (while motion to compel arbitration was pending, defendant filed answer, counterclaims, and motion to stay discovery, in response to plaintiff's assertion that defendant was in default; Fifth Circuit found defendant had not invoked judicial process). Particularly considering that ER Contracting moved to compel arbitration one week after removal, the Court finds that ER Contracting has not engaged in overt acts indicating that it wishes to resolve this matter via litigation. Therefore, ER Contracting has not substantially invoked the judicial process.

Further, even if ER Contracting had sufficiently invoked the judicial process, TCM makes no argument that it has been prejudiced due to a delay in the invocation of arbitration, as required to satisfy the second prong of the waiver analysis. *Forby*, 909 F.3d at 783. Therefore, the Court finds that ER Contracting has not waived its right to arbitration.

The Court concludes that the parties agreed to arbitrate the disputes in question and that there are no legal constraints external to the agreement that foreclose arbitration of the claims. As such, the Court grants ER Contracting's Motion to Compel Mediation and Arbitration [7].

Lastly, the Court turns to ER Contracting's request to stay the case pending mediation and, if necessary, arbitration.

IV.     *Motion to Stay*

The FAA provides that the Court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. 9 U.S.C. § 3; *see also Hall-Williams v. Law Office of Paul C. Miniclier, PLC*, 360 F. App'x 574, 578 (5th Cir. 2010) (court should stay case after finding that there exists a valid arbitration agreement and that the issues fall under the arbitration provision). Having found above that the claims herein are referable to arbitration, the Court grants ER Contracting's Motion to Stay [7] pending mediation and, if necessary, arbitration.

*Conclusion*

For the reasons set forth above, ER Contracting's Motion to Stay and Compel Mediation and, if necessary, Arbitration [7] is GRANTED. This case is hereby STAYED pending the outcome of the dispute resolution process. However, the parties shall file on the docket in this case quarterly updates regarding the status of the dispute resolution process. The first status update shall be due three months from today's date. The parties shall also notify the Court within 10 days as to the outcome of the mediation or arbitration.

SO ORDERED, this the 29th day of November, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE